(C. D. 615)

JACKSONVILLE PAPER CO. v. UNITED STATES

United States Customs Court, Third Division

(Decided April 20, 1942)

*Ragland, Kurz & Layton* (*Louis Kurz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Alfred A. Taylor, Jr.*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: In these six cases, which were consolidated for trial, the plaintiff seeks to recover a portion of the duties imposed upon

importations of kraft paper from Sweden which entered the United States at the port of Jacksonville, Fla.

It is claimed in the protests that the importer made entry of the goods at prices higher than the invoice values under duress; that the collector refused and declined to accept the entries that were first presented and demanded that new entries be·filed at values representing what the collector claimed were the foreign values of the merchandise; that in order to gain possession of the paper the plaintiff prepared and filed entries pursuant to the demand of the collector; and that the entries were made under duress at prices higher than the importer believed to be the dutiable values and the collector should be directed to reliquidate the entries at the final appraised values which are the same as the invoice values.

At the outset of the trial, counsel for the plaintiff offered in evidence a certified copy of the decision and judgment in reappraisement 113624–A, etc. (published in Reap. Dec. 4742), and the same was received and marked exhibit 1. This appears to be a decision on reappraisement covering all the merchandise on the entries herein involved together with the merchandise covered by entry J–271. The judgment order attached to the exhibit shows that the merchandise was appraised on the basis of export value at $2.60 per 100 pounds, less 2 per centum discount, less nondutiable charges for carriage from mill to port of shipment, ocean freight, and insurance.

The first witness called by the plaintiff was Mr. A. S. Reinoehl, the auditor of the importing company. He testified that he was employed by the plaintiff during the time the entries herein involved were filed and that he actually made the entries; that the first importation of the paper arrived in March, 1936, and he prepared the entry, J–271, on the basis of the invoice price, which was the export value of the merchandise, and the shipment was appraised on the entered value; that the second shipment arrived in April, 1936, and he prepared an entry on the same basis and presented it to the collector. A copy of that entry, J–307, was introduced in evidence and marked exhibit 2. When asked what transpired when exhibit 2 was presented to the collector, he said:

A. I was told by the customs officials they would not accept the entry on the basis of the invoice price, but it must be based on the foreign market value, and that the paper would not be released unless the entry was so made.

The witness testified that thereupon he prepared an entry on the basis of foreign value, and produced a copy of the entry which was admitted in evidence and marked exhibit 3. Although some of the figures on this exhibit are in green ink, the total of the entry is the same as that in protest 42190–K but it is not a duplicate of that entry. The witness stated that the price actually paid for the merchandise is the value on exhibit 2. He produced a copy of the invoice covering

the merchandise which was received in evidence and marked exhibit 4.

The witness testified further that the next shipment arrived in May, 1936 (covered by entry J–341, protest 42191–K); that at that time no appeal for a reappraisement had been filed with respect to the previous shipments; that he knew that the collector was contending that the foreign value was correct; that in all of the shipments subsequent to entry J–307 he made entries on the basis of invoice prices and added to make the foreign value, as insisted by the collector. Copies of the private invoices, relating to all of the subsequent shipments, to which, in some cases, are attached copies of the entries, were admitted in evidence and marked exhibits 6, 7, 8, and 9.

. The witness testified further that the shipments consisted of sack paper; that the importer did not pay more than the invoice prices for the merchandise; that prior to the entry of May 14, 1936 (covered by protest 42191–K), a letter was written to the collector protesting against the contention of the customs officers that the merchandise should be appraised on the basis of foreign value. That letter was received in evidence and marked exhibit 5. It is dated May 13, 1936, and refers particularly to the merchandise covered by consular invoice 765 which is a part of the official record in protest 42191–K.

On cross-examination the witness testified that he did not have any controversy with the customs officials at the time he made the entry in March, 1936 (entry J–271) and that entry was accepted by the customs officers; that when he presented his second entry (exhibit 2) the customs officers declined to accept it; that at that time he had a conversation with Mr. Bobbitt and with Mr. Diamond, who were customs officers at the port, and they insisted that the entry would have to be made on the basis of foreign value and stated that they would not release the shipment otherwise; that at that time he had no conversation with the customs officers about what they called a duress entry but such conversation did occur *after* all of the entries herein involved had been filed; that at the time of the first entry he knew of no pending reappraisement case involving the same kind of merchandise and it was not until after August, 1936, which is the date of the last entry, herein involved, that he learned about the case of *Arkell Safety Bag Co.* v. *United States*, Reap. Dec. 4301, which covered paper of the same kind.

The next witness for the plaintiff was Mr. C. G. McGehee, the president of the importing company. He testified that at the time of the second entry (covered by protest 42190–K), after he was told by Mr. Reinoehl that the customs officers refused to accept the entry on the basis of the invoice value, he went to Mr. Bobbitt's office and talked with him and with Mr. Diamond and they said they would not accept the entry on the basis of the invoice price or release the paper; that at that time he did not know of any similar case pending on

reappraisement; that he saw an article in one of the papers about a pending case more than a year after his conversation with the customs officers; that the paper covered by the entry of April, 1936 (J–307), was converted into sacks; that he had only a limited stock of paper on hand and if he had been unable to get the paper in that shipment it would have caused the closing of his mill within 10 days; that he wrote a letter to the customs officers on May 13, 1936 (referring to exhibit 5), but he did not have any conversation with them subsequent to the shipment in April and neither the collector nor anyone else in the customhouse indicated to him after the letter was received that an entry on the basis of export value would be acceptable.

On cross-examination, the witness testified that he had had two conversations with the customs officers, one at the time of the arrival of the first shipment (entry J–271) and the other at the time of the second shipment (covered by protest 42190–K). When asked concerning the conversation with respect to the second shipment, he said:

A. Well, we contended that the proper basis for entry was the invoice price less the non-dutiable items, and we attempted to make the entry on that basis and we were told emphatically it would not be accepted.

When asked if there was any conversation about a bond, he said "there may have been; I don't recall. I know a bond was provided." Subsequently, when asked concerning the conversation about a bond, he testified as follows:

X Q. Do you remember whether a bond was discussed in that conversation you had with Mr. Bobbitt and Mr. Diamond?—A. I do not. I don't recall any discussion about a bond at all.

X Q. Your understanding was that unless you changed the entry to meet the views of Mr. Bobbitt and Mr. Diamond you could not get your merchandise?—A. No understanding about it; they stated that emphatically.

X Q. That was the only condition under which they would permit you to take delivery of the importation?—A. That is correct.

Mr. Kimball R. Bonnett, the deputy collector in charge of the port of entry, who was acting appraiser at the time the entries herein involved were filed, was called in behalf of the defendant. He testified that Mr. McGehee and Mr. Reinoehl were new importers, that one entry, J–271, was filed in March, 1936, in which the value was the same as the invoice price and it was accepted at the customhouse and appraised as entered; that by the time entry J–307 was ready to be filed he had information that the invoice value, which represented the export value of the merchandise, was not the correct value and he informed Mr. McGehee that the merchandise on the entry he was about to file would be appraised at a higher value; that his purpose was to inform Mr. McGehee of the consequences of undervaluing his merchandise of which he was not aware; that Mr. Reinoehl and Mr. McGehee were told that the bond that was tendered to accompany the entry was not of a sufficient amount to cover the value,

plus the estimated duty on the merchandise, and could not be accepted; that before the merchandise could be released a bond sufficient to cover that value and the duty would have to be produced; that he did not tell Mr. McGehee or Mr. Reinoehl that the merchandise would not be released until the entry was made out in accordance with his views and that he was of opinion that Mr. McGehee got the idea that such refusal was being made when he was told that unless a bond in a sufficient amount was filed the goods could not be released; that at the time of his conversation with Mr. McGehee and Mr. Reinoehl he did not know of any pending appeal for a reappraisement involving the same merchandise; that he did not have any other conversation regarding other entries from April to August of that year. The witness testified further that the collector filed an appeal for a reappraisement of the merchandise covered by entry J–271 but that appeal was not pending at the time of his conversation with Mr. McGehee and Mr. Reinoehl. On cross-examination, the witness testified as follows:

X Q. Mr. Bobbitt, in making mention of the bond to be filed for delivery of this merchandise in Entry 307, did you or did you not state you were willing to accept the entry on the basis of the invoice price if a higher bond was given?—A. I would have to do that.

X Q. Did you do that?—A. Did I do what?

X Q. Did you state you would accept the entry on the basis of the invoice price if a bond of a sufficient amount was given?—A. Certainly, I did.

X Q. To whom did you make that statement?—A. Why to Mr. McGehee.

X Q. It is a fact though you told Mr. Reinoehl that you would not accept the entry based on the invoice price, but it would have to be made on the foreign market value?—A. No, I did not tell him that.

The next witness called by the defendant was Mr. Walter Diamond who was deputy collector acting as entry clerk at the time of the importations herein involved. He testified that in April, 1936, when the merchandise covered by entry J–307 arrived, Mr. Reinoehl and Mr. McGehee came to the customhouse to arrange the entry of the paper; that he told them that he had information that the invoice price was not the correct value and they were informed that an appeal to reappraisement would have to be taken by the collector in connection with the merchandise covered by entry J–271 due to the fact that the appraisement had been made at the invoice value; that the attempt was made to file the entry at the invoice value and they were informed that, in view of the information he had, a surety bond would have to be filed in an amount sufficient to protect the revenue, this amount being based on a new value; that the bond which was tendered with the entry was not sufficient to cover the correct value plus the estimated duty; that later when they filed an additional bond an entry was filed with an addition to the invoice value; that a bond is required on all importations provided the importer wishes to get a release of

the merchandise before liquidation takes place. His testimony as to what was said in regard to releasing the merchandise is as follows:

Q. At that conversation, in the presence of yourself and Mr. McGehee and Mr. Reinoehl, did Mr. Bobbitt say to Mr. McGehee that these goods, this merchandise, would not be released until the entry was amended to conform to the higher value?—A. No, sir.
Q. Did you say that to Mr. McGehee?—A. No, sir.
Q. Did anybody say it to him?—A. Not to my knowledge, and there was no one else to make the statement.
Q. Was there any conversation about what a duress entry was at that time?—A. I think there was.
Q. Can you remember what it was?—A. I think their attention was called to that law and the regulations regarding the filing of duress certificates, and they were advised that if they so chose they might fill out a duress certificate in connection with their entry. I don't recall to what extent it was discussed, however.
Q. Do you remember if anything was said about a pending test case?—A. No, I do not.
Q. Did you know about any pending test case yourself at that time?—A. Not at that time.

Witnesses Reinoehl and McGehee were recalled in rebuttal and testified that the government officers told them that they would not accept entry J–307 as first presented because the value was not high enough and they were not told that the entry would be accepted if a bond was filed covering a sufficient amount.

An examination of the invoices shows that in each case the merchandise was invoiced at $2.60 per 100 pounds, less 2 per centum cash discount, and that the importer added on entry various sums, such as 60 cents, 71.8 cents, 74.4 cents, and 75 cents per 100 pounds. In each case, except that covered by protest 42193–K, the appraiser noted on the invoice "F. M. V. 310 Swedish Kr. per 1,000 kilograms, packed," or other words to the same effect. There is attached to each invoice a slip entitled "NOTICE TO IMPORTER OF ADVANCE IN VALUE UPON APPRAISEMENT" showing the percentage by which the appraised value exceeds the entered value, so that it appears that the appraised value was even higher than the entered value after the importer's additions were taken into consideration.

The collector liquidated the entries on the basis of the entered value in each case, that value being higher than the final appraised value.

Counsel for the plaintiff, in his brief, argues that, since the Government officers refused to accept the entries as first presented by the importer at the invoice values and insisted that the values be advanced on entry before the merchandise would be released, the collector exercised duress in requiring the plaintiff to enter his goods at too high a value, and, under such circumstances, the collector should be directed to reliquidate the entries at the invoice values, which were also the final appraised values, and to refund the excess duties collected. Counsel cites a number of decisions on the subject of duress but the

only ones which involved a similar issue on customs duties are *Maxwell* v. *Griswold*, 51 U. S. (10 Howard) 242, and *Robertson* v. *Frank Brothers Co.*, 132 U. S. 17.

In the case of *Maxwell* v. *Griswold, supra*, the importer's invoice contained the price actually paid for the goods but the collector insisted that the value upon which duty should be assessed was the price of the goods at the time of shipment. The importer protested against the collector's decision but, in order to avoid the payment of additional duties, he increased the entered value to the value which the collector deemed to be correct. The court held that the invoice price represented the proper dutiable value, and, as the entry at the higher value was made under moral duress, the collector should take duty on the invoice value rather than the entered value. The court said:

> We have already seen, that the importer did not at first propose to enter his goods of such a value as to justify these increased duties. On the contrary, he insisted on entering them at only the price for which he purchased them, with charges, and thus agreeing with his original invoice, while the collector virtually insisted on having them appraised at their increased value as at the time of the shipment, such being the usage in the custom-house at New York, and such the requirement of the circular of the Secretary of the Treasury, November 24th, 1846. The importer, knowing that this would subject him to a severe penalty, in order to avoid it, felt compelled to add to his invoice the amount which the price had risen between the purchase and the shipment.
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*
>
> The money was thus obtained by a moral duress, not justified by law, and which was not submitted to by the importer, except to regain possession of his property withheld from him on grounds manifestly wrong. Indeed, it seems sufficient to sustain the action, whether under the Act of February 26, 1845, or under principles of the common law, if the duties exacted were not legal, and were demanded and were paid under protest.

The case of *Robertson* v. *Frank Brothers Co., supra*, was on a similar issue. The plaintiff imported some bananas and the collector told the importer that certain transportation charges would be added to the invoice value. In order to avoid the payment of a penalty, the importer added the transportation charges to the entry under protest. The court held that this addition was made under duress and that, as the transportation charges were not dutiable, the collector should take duty on the invoice value, which was the value at which the importer attempted to make entry before the collector advised him of what official action would be taken on appraisement.

The principle in the decisions above cited has been followed by the United States Court of Customs Appeals in numerous cases, citing *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007; id. 478, T. D. 31525; *United States* v. *Bauer*, 3 Ct. Cust. Appls. 343, T. D. 32627; *Batten & Co.* v. *United States*, 5 Ct. Cust. Appls. 447, T. D.

34975; *Vandiver* v. *United States*, 6 Ct. Cust. Appls. 80, T. D. 35327. All of those cases involved the question of whether importers had the right to designate certain "commissions" as nondutiable items on the entries in which condition the collector refused to accept them. New entries were prepared and filed in conformity with the collector's views. The importers succeeded in recovering the duty assessed on that item in all of the cases cited except *Batten & Co.* v. *United States, supra,* and, although the court held that the commission in that case was a dutiable item, it reviewed the various authorities and explained the principle as follows:

> So here the collector had no right to so control the action of the importers in making their entry that the importers could not there register their supposed rights in a manner that would enable them to avail themselves thereof in subsequent proceedings. If the importers wished in a reasonable way to record upon their entry the character of an item included thereupon that its nature might more plainly appear, or, particularly, that it might be so noted that they would not thereby be precluded from afterwards showing its true character, or would not thereafter be precluded by the law from insisting that it was not a dutiable item or not a part of market value, we can not conceive of .the validity of any action or regulation which would deny them absolutely this right. It follows that where the collector, however actuated, refuses to the importers that privilege, at least in a reasonable manner as was here attempted; such refusal upon the part of the collector within the decisions quoted would amount to duress.

Counsel for the defendant does not attempt to distinguish in his brief any of the cases cited above but argues that inasmuch as the plaintiff did not comply with the provisions of section 503 (b), that is, the importer did not add on entry an amount to equal advances made by the appraiser in a test case pending on appeal and file the certificates therein described, he is prohibited from recovering the excess duties by the provisions of section 503 (a) of the Tariff Act of 1930, providing that the basis for the assessment of duties on merchandise subject to ad valorem rates shall be "the entered value or the final appraised value, whichever is higher."

The corresponding provision involved in the decisions above cited was:

> The duty shall not, however, be assessed upon an amount less than the *invoice or entered* value. [Italics ours.]

That provision was contained in section 2900 of the Revised Statutes; section 7 of the Customs Administrative Act of June 10, 1890; and in subsection 7 of section 32 of the Tariff Act of 1897. In the Tariff Act of 1909, Congress made a significant change in the language of the corresponding provision, which is found in that act in subsection 7 of section 28, reading as follows:

> The duty shall not, however, be assessed in any case upon an amount less than the *entered* value. [Italics ours.]

It will be noted that the word *"invoice"* was eliminated so that the invoice value could no longer be considered as a statutory limitation for the assessment of duty. Congress made the *entered* value the standard below which the duty could not be assessed. In the Tariff Act of 1913, subsection I of section III, Congress enacted the following provision:

\* \* \* The duty shall not, however, be assessed in any case upon an amount less than the *entered value*, unless by direction of the Secretary of the Treasury in cases in which the importer certifies at the time of entry that the entered value is higher than the foreign market value and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement, and the importer's contention shall subsequently be sustained by a final decision on reappraisement, and it shall appear that the action of the importer on entry was taken in good faith, after due diligence and inquiry on his part, and the Secretary of the Treasury shall accompany his directions with a statement of his conclusions and his reasons therefor. [Italics ours.]

It will be noted that, with one exception, the *entered* value was made the minimum standard for the assessment of duty.

In the Tariff Act of 1922, the corresponding provision appears in section 489, reading as follows:

\* \* \* Duties shall not, however, be assessed upon an amount less than the entered value, except in a case where the importer certifies at the time of entry that the entered value is higher than the value as defined in this Act, and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement, and the importer's contention in said pending cases shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and it shall appear that the action of the importer on entry was so taken in good faith, after due diligence and inquiry on his part, and the collector shall liquidate the entry in accordance with the final appraisement.

The corresponding provision in the Tariff Act of 1930, herein involved, reads as follows:

SEC. 503. DUTIABLE VALUE.

(a) GENERAL RULE.—Except as provided in section 562 of this Act (relating to withdrawal from manipulating warehouses) and in subdivision (b) of this section, the basis for the assessment of duties on imported merchandise subject to ad valorem rates of duty shall be the entered value or the final appraised value, whichever is higher.

(b) ENTRIES PENDING REAPPRAISEMENT.—If the importer certifies at the time of entry that he has entered the merchandise at a value higher than the value as defined in this Act because of advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement, and if the importer's contention in such pending cases, shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and if it shall appear that such action of the importer on entry was taken in good faith, the collector shall liquidate the entry in accordance with the final appraisement.

Section 489 of both the act of 1922 and the act of 1930 provides also that an importer may obtain a remission of additional duties for

undervaluation upon a petition filed and supported by evidence before the court establishing good faith in making the entry at the values contained therein.

It thus appears from an examination of the statute now in force that an honest importer can by a judicial review secure a correct valuation of his imported merchandise and avoid the payment of additional duties in cases where the appraiser's valuation is found to be correct and he can also avoid the payment of excess duties if it is shown that his contention is correct, provided that he complies with the provisions of the law.

Counsel for the plaintiff in this case does not rely on the provisions of section 503 (b). No attempt was made to comply with that section upon entry. His sole claim rests upon what the United States Supreme Court in *Maxwell* v. *Griswold, supra,* and *Robertson* v. *Frank Brothers Co., supra,* designated as "moral duress" on the part of the collector in refusing to accept the entry as plaintiff desired to file it or in influencing or requiring the importer to enter his goods at values which would avoid the assessment of additional duties.

The two witnesses who testified in behalf of the plaintiff appear to be reputable business men, one being the president and the other the auditor of the importing company. They testified unqualifiedly that they attempted to enter the goods covered by entry J–307 at the invoice prices which represented the export values of the merchandise, which values were afterwards found upon reappraisement to be the correct dutiable values of the paper, and the customs officers refused to accept entry on that basis but required them to enter the goods on the basis of foreign value under threat that otherwise the merchandise would be subject to the assessment of additional duties for undervaluation. We are of opinion that the weight of evidence indicates that the customs officers influenced or required the importer to enter the paper at values higher than the correct dutiable values which were the values at which attempt was first made to make entry. This amounts to what the United States Supreme Court designated as "moral duress" in *Maxwell* v. *Griswold, supra,* and *Robertson* v. *Frank Brothers Co., supra.* In those cases the court held that the merchandise was duitable at the invoice values, but the law in force at that time provided that duty should not be assessed upon an amount less than the *"invoice or entered value."* That provision has been changed in the recent tariff acts so that now the law does not permit the use of the invoice value as a basis for the assessment of duty unless the invoice value, the entered value and the final appraised value are the same. This is clearly shown in the excerpts quoted above from the provisions of section 503 (a) and (b).

Since the law was changed in the 1909 act, it has been held in numerous cases that the limitations contained in the law are conclusive.

In the case of *Tweel & Co.* v. *United States*, 9 Ct. Cust. Appls. 73, T. D. 37944, the importer advanced the value of a shipment on entry to make market value by adding the sum of 850.93 milreis, claimed to be equal to 6⅔ per centum of the value. He made a further addition to meet advances made by the appraiser in similar cases by adding the sum of 1,306.402 milreis, equal to about 10 per centum of the value of the goods. On reappraisement the court held that the invoice value represented the dutiable value of the shipment. When the collector liquidated the entry, he deducted from the entered value the amount added by the importer to meet advances made by the appraiser in a test case, amounting to about 10 per centum of the value, but he refused to deduct the 850.93 milreis. The court held that the collector acted legally in refusing to assess duty on an amount less than the price to which the importer advanced the value by the addition of the 850.93 milreis. The court said:

The statute provides that duty shall not be assessed in any case upon an amount less than the entered value, unless by direction of the Secretary of the Treasury, etc.

No question is made here that the importers have not complied with the statutory conditions, or that their contention has not been sustained.

The real issue is, What was the importers' contention when the goods were entered? Did the importers intend, as claimed by the Government, to add the 850.93 milreis to the invoice value to make market value, or did they intend that, as well as the 10 per cent addition, to meet advances of appraisers in similar cases? In this connection it is noted that the 850.93 milreis is not 6⅔ per cent of the invoice value of the goods excluding the Azores embroideries, but as nothing is claimed for this error it is not considered by us.

While such a conclusion involves an assessment of duty upon more than the invoice value of the goods, which latter value has been sustained by the reappraisement board, we think, nevertheless, it should be held that the importer's contention set forth in the papers at the *time of entry* was that the 1306.402 milreis was the *only addition* made to meet the appraiser's advances in similar cases.

The importers saw fit, and properly, to employ the blank which the Treasury Department had provided for these cases. Therein it was explicitly stated that the 10 per cent addition to the goods was to meet such advances, and we think the customs officials were justified in regarding the papers as limiting said claim to that item only.

In *Ciba Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 309, T. D. 41913, merchandise was entered under paragraph 28 of the Tariff Act of 1922 on the basis of American selling price and it was appraised on the basis of United States value at a lower valuation. The collector, in liquidating the entry, assessed duty on the basis of the higher entered value and the court sustained his action. After quoting the provision in section 489 of the act of 1922, in which it is provided that "Duties shall not, however, be assessed upon an amount less than the entered value" with one exception, the court said:

The language of the quoted provisions is simple, plain, and free from ambiguity. The statute provides that duties shall not be assessed upon an amount *less than*

*the entered value,* with one exception only, namely, "where the importer certifies at the time of entry *that the entered value is higher than the value as defined in this act.*" This one exception is further limited to the existence of the following conditions: *"and that the goods are so entered* in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-re-appraisement, *and the importer's contentions in said pending cases shall subsequently be sustained, wholly or in part,* by a final decision on reappraisement or re-re-appraisement, *and it shall appear that the action of the importer on entry was so taken in good faith,* after due diligence and inquiry on his part, *and the collector shall liquidate the entry in accordance with the final appraisement."*

The only exception to the operation of the general provision that duties shall not be assessed upon an amount less than the entered-value is so qualified and limited by the express language of the statute as to show conclusively that no other exception was intended to the operation of the general provision. To bring his entry within the one exception to the general provision the importer must make and file the certificate required by the statute; his contentions in the pending cases must be sustained by the courts, "wholly or in part," and it must appear that his entry was made in good faith, after the exercise of due diligence and inquiry. It is evident that if the provision in question was held to be applicable only to cases in which additional duties were involved it would have no application whatever. Additional duties are never assessed unless the entered value is less than the appraised value. Where the entered value is less than the appraised value the provision that duties shall not be assessed upon an amount less than the entered value could have no application.

Our understanding of the provisions of section 489 in question may be summarized as follows: "Duties shall not, however, be assessed upon an amount less than the entered value," except under certain circumstances and conditions; and when those circumstances and conditions prevail "the collector shall liquidate the entry in accordance with the final appraisement." The last clause of section 489 is significant. [Italics ours.]

In *Hearne v. United States,* 15 Ct. Cust. Appls. 378, T. D. 42565, the importer made an advance on entry and filed a certificate containing a reference to two entries which were pending in protest cases but which were not pending on appeals for reappraisement. The court held that the certificates were not valid and that the addition was not made under duress within the meaning of the provision in section 489 of the Tariff Act of 1922. The court said:

It will be observed there that the act reads "similar cases then pending on appeal for reappraisement or re-reappraisement." We hold that, since there were no similar cases shown to have been pending for reappraisement or re-reappraisement, there was no justifiable basis for the duress entry and that the value given by the importer in the entry, which was accepted and liquidated upon by the collector, was the proper dutiable value. In other words, an importer of merchandise can not obtain the advantage of the duress provisions of the paragraph by entering at a higher value than he claims for the goods and avoid the provisions of paragraph 489 by setting out in the entry that there are pending protest cases involving the same question.

In the instant case the importer, if he believed he was right and was willing to take the chances of additional duties, should have entered at the value he claimed warranted by paragraph 5, since unless there were similar cases in reappraisement or re-reappraisement pending he had no right to rely upon his alleged duress entry for any appraised value less than his entered value.

We overrule the plaintiff's claim in this case with extreme reluctance because we believe that the equities are all in favor of the importer. The court has no equity jurisdiction, however, and must decide the issue strictly in accordance with the written law. An examination of the decisions of our appellate court demonstrates that duty must be assessed on not less than the entered value of imported merchandise unless the importer, in accordance with the provisions of section 503 (b), made an addition on entry to meet advances by the appraiser in similar cases pending on reappraisement, in which event the collector is authorized to assess duty on the final appraised value if it is lower than the entered value. Section 503 (b) contains provisions which have substantially the same meaning as those in section 489 of the Tariff Act of 1922 which were construed by the appellate court in two of the cases cited.

The importer in this case did not make additions on entry to meet advances by the appraiser in a similar case and file certificates to that effect with the entry as provided in section 503 (b). Both the Government officers and the officials of the importing company testified that they did not know there was a test case pending on reappraisement at the time the entries in this case were filed. If the importer's representative believed that the invoice price was the proper dutiable value, he had the privilege of making a test case by entering the goods in entry J–307 at that value and filing an appeal for a reappraisement after the appraiser advanced the value on that entry. The values in the subsequent entries could have been advanced by him to meet the advance of the appraiser in that test case. Then, since the merchandise was subsequently reappraised at the values which the importer claimed to be correct, the payment of the excess duties complained of would not have been required. The importers adopted that procedure with respect to the shipments covered by S. Goto et al. v. United States, C. D. 565, and the court held that duty should be assessed on the final reappraised value rather than on the entered value of the goods.

The plaintiff in the instant case appears to have been unfamiliar with the provisions of section 503 (b) when the entries were made, and we hold that the collector acted within the strict letter of the law when he computed the duty on the basis of the entered value. The protests are overruled. Judgment will be entered in favor of the defendant.